UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LAWRENCE PETERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:11-cv-01122-TWP-MJD |
| ) | |
| LIEUTENANT R. MARVELL sued in his ) | |
| individual and official capacities, under color ) | |
| of state law, and OFFICER M. BALLARD ) | |
| sued in his individual and official capacities, ) | |
| under color of state law, ) | |
| ) | |
| Defendants. ) | |

**ENTRY DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Lawrence Peterson ("Mr. Peterson"), an inmate at the Pendleton Correctional Facility ("Pendleton"), filed this civil rights complaint against Lt. R. Marvell ("Lt. Marvell") and Officer M. Ballard ("Officer Ballard") (collectively, "Defendants"), both members of Pendleton's correctional staff. Mr. Peterson alleges Defendants were deliberately indifferent to his serious medical needs by denying him access to the medical department for treatment of his diabetes. In addition, Defendants allegedly placed Mr. Peterson in an unsafe and unhealthy area for no reason. Defendants deny any wrongdoing and seek resolution of the claims alleged against them through summary judgment.

For the reasons explained below, Defendants' Motion for Summary Judgment (Dkt. 35) must be **DENIED**.

## I.  SUMMARY JUDGMENT STANDARD

"As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1103 (7th Cir. 2008) (citations omitted).  The motion for summary judgment in this civil rights action, as with any such motion, must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears "the initial responsibility of informing the district court of the basis for its motion," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and must demonstrate that no genuine issue of material fact exists for trial.  *Id.* at 322.  Once the moving party demonstrates that there is no genuine issue of material fact, the non-moving party bears the burden of demonstrating that such a genuine issue of material fact exists.  See *Harney,* 526 F.3d at 1104 (citing cases).

## II.  MATERIAL FACTS

As an initial matter, the Court notes its concerns with the "facts" presented by each party. The first concern is with Mr. Peterson's inadequate responses to the interrogatories served on him.  For example, at Interrogatory No. 2 Mr. Peterson is asked to identify all witnesses to the events described in the Complaint.  Mr. Peterson's response is "N/A."  In the briefing of this motion, however, Mr. Peterson submits a declaration from inmate Randy Johnson.  Mr. Peterson also states in his response that Nurse Dotson was at the gate and asked to be let out to attend to Mr. Peterson, but Lt. Marvell denied her request.  Dkt. No. 43.  Finally, the Complaint states that another Captain heard Mr. Peterson's cries for help and saw his condition and immediately called medical.  These witnesses should have been listed in response to Interrogatory No. 2.  The

second concern is Defendants' alleged failure to respond to the interrogatories served on them December 21, 2012. The proper management and efficient resolution of this action requires all parties to respond in good faith to discovery.

In compiling the "facts" listed below the Court relied on Mr. Peterson's Complaint (signed under penalty of perjury), affidavit (Dkt. No. 43-4), and certain exhibits (Dkt. Nos. 43-1 and 43-2). *See Payette v. Hoenisch*, 284 Fed.Appx. 348, 350, 2008 WL 2648917, *1 (7th Cir. 2008) (finding district court erred by not considering the complaint as evidence on summary judgment when the plaintiff declared under penalty of perjury that the complaint was true); *Ford v. Wilson*, 90 F.3d 245, 247 (7th Cir. 1996) (to the extent that the complaint contains factual assertions that comply with the requirements of Rule 56(e), it can be converted into an affidavit by declaring it to be true under penalty of perjury and signing it). The following statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Mr. Peterson as the non-moving party. See *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

At all times relevant to the Complaint, Robert Marvell was a Correctional Lieutenant and Michael Ballard was a Correctional Officer at Pendleton Correctional Facility, a maximum security prison located in Pendleton, Indiana. On February 21, 2011, at 1:00 p.m., Mr. Peterson was released from his cell (along with other diabetic prisoners) in order to go to the medical facility to receive insulin. This inmate movement was routine and occurs at approximately the same time each day.

Lt. Marvell was working near the facilities checkpoint 1. Mr. Peterson observed Lt. Marvell unlocking the gate to the medical facility and allowing white inmates through the gate.

Lt. Marvell locked the gate as Mr. Peterson and other black inmates approached. Lt. Marvell told Mr. Peterson he would not be receiving insulin today and to return to his housing unit. Mr. Peterson requested to see a higher ranking staff member and refused to leave.[1] In response, Lt. Marvel ordered Mr. Peterson to put his hands behind him and "cuff up" and ordered Officer Ballard to assist in restraining Mr. Peterson.

Lt. Marvel and Officer Ballard dragged Mr. Peterson across the yard to a holding cell that was used for the temporary placement of offenders for a cool down period. A cool down period helps reduce any possible physical incidents toward staff or other offenders while offenders are in an agitated and/or uncontrollable state. The holding cells do not have a bed, sink or toilet. The cell Mr. Peterson was placed in had one window located on the back wall that is manually operated from the inside of the cell. Lt. Marvell opened the window letting in the cold rain.[2] Mr. Peterson was left cold,[3] on the floor, in restraints, and without insulin for four hours. At around 5:00 p.m., Mr. Peterson was finally escorted to the infirmary for evaluation and his daily diabetic treatment. After placing Mr. Peterson in the holding cell at approximately 1:00 p.m., Officer Ballard had no further contact with Mr. Peterson.

---

[1] Lt. Marvell and Officer Ballard each testified that Mr. Peterson was screaming and that they could not determine what he wanted. This testimony is directly contradicted by the Report of Conduct issued by Lt. Marvell in which he states that at 1:10 p.m. Mr. Peterson and another offender were yelling and demanding access to the infirmary gate. Lt. Marvell asked why and they stated they were diabetics. Dkt. No. 43-1.

[2] Lt. Marvel and Officer Ballard testified that the window is operated from within the cell leaving the option of opening or closing the window at the discretion of the cell's occupant. But, Mr. Peterson testified that his restraints were not removed while he was in the holding cell and therefore he was unable to close the window. Defendants object to Mr. Peterson's affidavit which states that he was left in restraints and therefore unable to close the window on the basis that this is the first time this allegation has been raised. But this allegation is consistent with the Complaint which alleges that Mr. Peterson was retrained with his hands behind his back. Mr. Peterson makes no reference to the cuffs ever being removed.

[3] Mr. Peterson testified he was cold. This is consistent with the weather report issued by Middletown 2W weather station as reported on www.weathersource.com. That weather station reported that on February 11, 2011, the maximum temperature was 19.0° F, the medium temperature was 4.5° F, and the minimum temperature was 10.0° F.

Neither Defendant is a medical professional or has training in medical treatment or diagnosis. Mr. Peterson identified his medical problems as "Diabetic at all times" and "Diabetic blood sugar was very high;" conditions neither Defendant was able to visually observe.

### III. DISCUSSION

Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights elsewhere conferred. *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). The first step in any 42 U.S.C. §1983 claim is to identify the specific constitutional right infringed. *Albright v. Oliver,* 510 U.S. 266, 271 (1994). The right implicated by Mr. Peterson's claims is the Eighth Amendment. As a convicted offender, the conditions of Mr. Peterson's confinement are constrained by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."). Hence, pursuant to the Eighth Amendment, prison officials have a duty to Aprovide humane conditions of confinement; . . . [to] ensure that inmates receive adequate food, clothing, shelter and medical care, and [to] 'take reasonable measures to guarantee the safety of the inmates[.]'" *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer,* 468 U.S. 517, 526-27 (1984)).

**A.**     **Medical Care Claim**

In order for Mr. Peterson to succeed on a claim of failure to provide medical attention, he must prove that he (1) had a serious medical need, (2) the defendant was deliberately indifferent to his serious medical need, and (3) the defendant's conduct caused him harm. *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976). Deliberate indifference exists only when an official "knows

5

of and disregards an excessive risk to an inmate's health; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837 (construing *Estelle*). A condition is serious if "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997) (citation and internal quotations omitted).

Defendants do not dispute that diabetes qualifies as a serious medical need. Instead, they argue that they did not have knowledge that Mr. Peterson had diabetes requiring treatment. If the jury accepts Mr. Peterson's version of the facts, then Lt. Marvell and Officer Ballard knew based both on Mr. Peterson's statements and the circumstances of their interaction that Mr. Peterson was diabetic and that he, along with other inmates, were trying to go to the medical facility for insulin. A reasonable jury could conclude that Lt. Marvell and Officer Ballard allowed other offenders to proceed through the gate to receive medical treatment, but not Mr. Peterson because they intended to cause him harm. This conclusion is supported by the fact that medical personnel were not contacted by either officer to request treatment for Mr. Peterson while he was restrained in the holding cell.

Defendants cite to *Radunz v. Muhlhausen*, 375 Fed. App'x 618 (7th Cir. 2010), for the proposition that diabetes does not automatically require immediate intervention and that there must be some active visible distress—rising to the level of serious medical need—for the correctional officers to know of and intentionally disregard. But that is not the holding of *Radunz*. In that case, Mr. Radunz admitted in his complaint that his diabetes was treated by diet and medication and monitored by two blood-sugar checks a day. The Seventh Circuit held that Mr. Radunz "pleaded himself out of court by alleging facts which rule out his contention that his

6

medical issues were ignored." *Id.* at 620.  In this case, Mr. Peterson alleges Defendants actively impeded his regularly scheduled blood sugar check and insulin injection which is necessary to keep his diabetes under control.  In *Radunz*, the jailers responded reasonably by providing Mr. Radunz with "prompt and adequate medical treatment." *Id*.  In this case, if Mr. Peterson's version of the facts is accepted, Defendants did not act reasonably but instead, acted with deliberate indifference.

**B.     Conditions of Confinement**

In order for Mr. Peterson to prevail on his claim that he was subjected to unconstitutional conditions of confinement he must prove that he was incarcerated under conditions that posed a substantial risk of serious harm to his health or safety and that Defendants were deliberately indifferent to his health or safety.

If Mr. Peterson's version of the facts is believed by a jury, it could conclude that Lt. Marvell and Officer Ballard took Mr. Peterson to a holding cell that is used for the temporary placement of offenders.  Lt. Marvell then opened the window thereby purposely exposing Mr. Peterson to frigid temperatures and rain for four hours, a situation which Mr. Peterson was unable to alter because Defendants left him with his hands cuffed behind his back.

**C.     Qualified Immunity**

Defendants argue that they are entitled to qualified immunity because there was no clearly established right at the time of Mr. Peterson's suit that guaranteed attention to a medical condition Defendants did not know of, or protection from a cold cell when Mr. Peterson chose not to close the open window.  The Court disagrees.  Defendants are not entitled to qualified immunity as a matter of law at this time because whether or not they knew Mr. Peterson required medical attention and whether or not Mr. Peterson was able to close the open window are

material facts in dispute. *See Whitlock v. Brueggemann*, 682 F.3d 567, 587 (7th Cir. 2012) (discussing disputes of material fact in context of qualified immunity analysis).

## IV.   CONCLUSION

For the reasons explained above, many material facts are in dispute making resolution of this action through summary judgment inappropriate. Accordingly, Defendants' Motion for Summary Judgment (Dkt. 35) is **DENIED**.

**SO ORDERED.**

Date: 04/29/2013

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Lawrence Peterson, #892938
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
Pendleton, Indiana  46064

Kate E. Shelby
OFFICE OF THE INDIANA ATTORNEY GENERAL
kate.shelby@atg.in.gov

Wade J. Hornbacher
OFFICE OF THE INDIANA ATTORNEY GENERAL
wade.hornbacher@atg.in.gov